FULMER, Judge.
The State appeals an order granting Terrick Taylor’s motion for discharge under the speedy trial rule, Florida Rule of Criminal Procedure 3.191. We reverse.
On October 28, 2001, while being held at the juvenile detention center on unrelated charges, Terrick Taylor was interviewed by Deputy Ferguson concerning several offenses the deputy was investigating. On December 28, 2001, Taylor was charged by a direct filed information with aggravated assault and possession of a weapon on school property. On January 4, 2002, a Transportation Order was entered, directing that Taylor be transported from the juvenile detention center to the county jail to be held on the direct filed charges. Because Taylor had been moved from the detention center to a commitment facility, he was not transported to the county jail. Thereafter, a notice of arraignment was sent to Taylor’s home address and was returned as undeliverable. It is undisputed that Taylor did not receive the notice of arraignment because he was in custody on unrelated charges. When Taylor failed to appear for arraignment on January 22, 2002, a capias was issued. On December 5, 2002, the outstanding capias was executed when Taylor surrendered himself to the court.
On February 21, 2003, Taylor filed a motion to dismiss the information in which he alleged that the speedy trial time period began to run on October 29, 2001, when he was interviewed by Deputy Ferguson at the juvenile detention center and not when he surrendered himself on the outstanding capias. At the hearing on the motion, Deputy Ferguson testified about his interview with Taylor at the detention center. The officer testified that, based on Taylor’s admissions during the interview, he had probable cause to arrest Taylor but did not do so because Taylor was already in custody. He advised Taylor that he would refer the charges to the State Attorney’s office and that Taylor would be charged with aggravated assault and possession of a weapon on school property. Taylor did not testify at the hearing.
The trial court issued an order granting Taylor’s motion, reasoning that had Taylor been transported as ordered in the January 4, 2002, Transportation Order, the speedy trial time period would have started to run on the date of the arraignment and that it was through no fault of Taylor that he failed to appear. The trial court concluded that the State failed to bring Taylor to trial within the speedy trial time limits. We disagree.
No provision of the speedy trial rule supports the trial court’s conclusion that the State’s failure to transport Taylor to arraignment triggered the running of the speedy trial clock. Rule 3.191(a) provides that the speedy trial time period commences when a person is “taken into custody as defined under subdivision (d).” Subdivision (d) states that a person is taken into custody “(1) when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged, or (2) when the person is served with a notice to appear in lieu of physical arrest.” Here, it is undisputed that Taylor was never served with a notice to appear. Therefore, the only way that the speedy trial period could have commenced is by Taylor being arrested for the conduct that gave rise to the direct filed charges.
We recognize that the deputy’s testimony that he never physically arrested Taylor is not dispositive of whether *1220 Taylor was in fact “arrested” for purposes of triggering the speedy trial rule because “[a] formal arrest, complete with fingerprinting and formal charges, is not always necessary to start the running of the speedy trial time.” Williams v. State, 757 So.2d 597, 599 (Fla. 5th DCA 2000). Instead, we look to the definition of “arrest” as applied by the supreme court in resolving speedy trial issues. See id. at 599; see also Griffin v. State, 474 So.2d 777, 779 (Fla.1985) (applying definition of technical arrest to conclude that defendant who was in custody during a police interrogation for purposes of Miranda requirements had not been arrested for purposes of the speedy trial rule). An arrest involves the following elements:
(1) [a] purpose or intention to effect an arrest under a real or pretended authority; (2) [a]n actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) [a] communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) [a]n understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.
Brown v. State, 515 So.2d 211, 212 (Fla.1987) (quoting Melton v. State, 75 So.2d 291, 294 (Fla.1954)).
The facts in this record do not support a conclusion that Taylor was arrested by Deputy Ferguson. Deputy Ferguson’s testimony reflects his intent to question Taylor, not to arrest him. While Taylor was already in custody on other charges, Deputy Ferguson took no action to have Taylor detained on the charges he was investigating beyond the interview period. See State v. Miller, 437 So.2d 734 (Fla. 1st DCA 1983) (holding that speedy trial period did not begin to run when defendant who was in custody on unrelated case was given Miranda warnings and questioned about the alleged crime). Further, at no time did Deputy Ferguson communicate to Taylor an intent to effect an arrest. Thus, we cannot affirm the trial court’s discharge order based on Taylor’s argument that he was arrested by Deputy Ferguson.
We conclude that Taylor was taken into custody for purposes of the speedy trial rule on December 5, 2002, when he surrendered on the outstanding capias. Accordingly, we reverse the order discharging the information and remand for further proceedings.
Reversed and remanded.
ALTENBERND, C.J., and STRINGER, J., concur.